**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**DEONTA BRYANT,**

**Petitioner,**

**vs.**

**CASE NO. 4:09cv22-SPM/WCS**

**WALTER McNEIL,**

**Respondent.**

_____/


**REPORT AND RECOMMENDATION**

This is an amended petition for writ of habeas corpus filed by Deonta Bryant pursuant to 28 U.S.C. § 2254.  Doc. 8.  Petitioner challenges his convictions and sentences for revocation of probation in case number 2000-CF-2028, revocation of probation in case number 2001-CF-303, for possession of cocaine and resisting an officer without violence in case number 2002-CF-4294, and for armed robbery with a deadly weapon and kidnapping to facilitate a felony in case number 2002-CF-4499 in the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida.  Respondent filed an answer and the record  in paper form.  Doc. 18.  References herein

to exhibits are to the record in paper form.  Petitioner filed a traverse and an amended traverse.  Docs. 19 and 20.

On June 25, 2003, Petitioner entered a no contest plea to the charges of violation of probation in the two cases identified above, and the new criminal offenses charged in case numbers 2002-CF-4294 and 2002-CF-4499.  Apparently Petitioner was separately sentenced to a 5 year prison term in case number 2002-CF-4294 on August 19, 2003.  On January 13, 2004, represented by counsel, Petitioner moved to withdraw his no contest plea as to all cases.  The trial court held an evidentiary hearing on February 25, 2004, and March 10, 2004, and denied the motion to withdraw in a lengthy opinion.  Sentencing on the remaining cases followed. Petitioner's claims arise from this conjunction of events.

The legal standards for adjudicating Petitioner's claims are familiar and will be referenced only as relevant in the court's analysis.  Respondent concedes that the petition was timely filed.  Doc. 18, p. 10.

**Ground One**

Petitioner claims that his nolo contendere plea was involuntary.  He also alleges: "Petitioner [illegible] that he accepted the plea because counsel did not investigate the facts of his case and that if he proceeded to trial, he would lose."  Doc. 8, p. 4.  In his initial petition (referenced here for clarification of this claim), Petitioner said that his attorney "was wholly unprepared for trial," and Petitioner "believe that had he proceeded to trial, that a life sentence would have been a foregone conclusion."  Doc. 1, p. 9 on ECF (the electronic docket).  As a subsidiary claim, Petitioner contends that the trial court caused him to be subjected to double jeopardy when it continued the hearing to

permit Petitioner's trial counsel to attend and testify.  Doc. 8, p. 8 on ECF.  Respondent

concedes that Petitioner exhausted state court remedies as to this claim.  Doc. 18, p.

18.

The subsidiary claim will be addressed first.  The Double Jeopardy Clause

protects against three distinct abuses:  a second prosecution for the same offense after

acquittal; a second prosecution for the same offense after conviction; and multiple

punishments for the same offense.  North Carolina v. Pearce, 395 U.S. 711, 717, 89

S.Ct 2072, 2076, 23 L.Ed.2d 656 (1969).  Continuance of a hearing to allow a witness to

attend and testify does not implicate the Double Jeopardy Clause.  Nor does a

continuance give rise to a due process claim.  Indeed, as will be discussed ahead, the

state trial court very carefully reviewed the evidence.  The continuance to allow counsel

to testify was in pursuit of due process.

The first part of ground one is a two-fold challenge, claiming an involuntary plea

and ineffective assistance of counsel with respect to the plea.

"A guilty plea is knowingly and voluntarily made if the defendant enters his plea

without coercion and understands the nature of the charges and the consequences of

his plea." United States v. Brown, 586 F.3d 1342, 1346 (11th Cir. 2009), *cert. denied*,

130 S.Ct. 2403 (2010).   But in a post conviction challenge to a guilty plea:

> [T]he representations of the defendant, his lawyer, and the prosecutor at
> [the plea] hearing, as well as any findings made by the judge accepting
> the plea, constitute a formidable barrier in any subsequent collateral
> proceedings.  Solemn declarations in open court carry a strong
> presumption of verity.  The subsequent presentation of conclusory
> allegations unsupported by specifics is subject to summary dismissal, as
> are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977) (citations omitted); *see also* United States v. Gonzalez-Mercado, 808 F.2d 796, 799-800 and n. 8 (11th Cir. 1987) (while not insurmountable, there is a strong presumption that statements made during a plea colloquy are true, citing Blackledge and other cases).

A defendant claiming ineffective assistance of counsel must demonstrate both professional error and prejudice to the outcome of the proceedings, and failure to demonstrate either is dispositive of the claim against the petitioner.  Strickland v. Washington, 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984).  To be valid a guilty plea must represent a voluntary and knowing choice among available alternatives, so it must be made with reasonably effective assistance of counsel.  The Strickland formula therefore applies to claims of ineffectiveness of counsel in the context of a guilty plea.  Hill v. Lockhart, 467 U.S. 52, 58, 106 S.Ct 366, 370, 88 L.Ed.2d 203 (1985); Stano v. Dugger, 921 F.2d 1125, 1149 (11th Cir.), *cert. denied*, 502 U.S. 835 (1991) (citing Hill, other citations omitted).  While the performance analysis is the same, the prejudice inquiry focuses on the effect of counsel's performance on the guilty plea process, and "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  921 F.2d at 1150, *quoting* Hill, 467 U.S. at 59, 106 S.Ct. at 370.  "[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry [whether it caused him to plead guilty] will depend largely on whether the affirmative defense likely would have succeeded at trial."  Hill, 474 U.S. at 59, 106 S.Ct. at 371 (citation omitted).

At the end of the evidentiary hearing, the state trial court ruled:

The defendant has come before me with a motion basically asserting two
things. One, that he was pressured into a plea, coerced by his attorney
into doing that; and that he had inadequate time to discuss the plea.

I find no proof of either of those two assertions by Mr. Bryant, other than
Mr. Bryant's testimony, which I find to be wholly incredible.

In terms of pressure, Mr. Bryant's testimony in this hearing is not only
refuted by the attorney, it is refuted by the record where Mr. Bryant
testified under oath on Page 16 of the plea colloquy that no one had
threatened him in any way to get him to enter into this plea.

In terms of the time, it is refuted by the testimony and frankly by my
recollection of the events.  We took a relatively lengthy recess in this trial.
It is also refuted by Mr. Bryant's own sworn testimony.  He was specifically
asked by the Court: "Have you had adequate time to discuss this with Mr.
Phillips and come to a decision in this case?"  The defendant testified
under oath: "Yes, sir."

The true situation here, as I believe it – and I should point out, there was
an assertion that he has not been sentenced. That's true on most of the
cases.  He has been sentenced in one of these cases.

The true circumstances are that Mr. Bryant had a change of heart after his
codefendant got acquitted.  Frankly, the codefendant's trial, which I
presided over, was an aberrational verdict.  Nine out of ten juries would
have convicted the codefendant.  I can't explain why it happened in this
particular codefendant's case, but it did.  He was acquitted.

I think that encouraged Mr. Bryant that he wanted to go back and set
aside his plea. In the course of that trial, Mr. Bryant provided testimony
and testified under oath as to his part in the robbery and kidnapping,
which, I mean, we are certainly not here with somebody who is innocent of
the charges.

He has written to me letters in which he indicated that he voluntarily
offered to testify against the codefendant.

I agree with Mr. Phillips' assessment, the defendant probably would have
been convicted of kidnapping, and some degree of robbery.  In my
estimation, for whatever it is worth, I believe he would have been
convicted of robbery with a weapon, a 30-year offense.  I do believe he
would have been convicted of the kidnapping charge.  There certainly was

adequate evidence for those two matters to go to the jury, whether it would have gone to the as-charged of robbery with a deadly weapon, which would have been a first degree felony punishable by life.

As I recall, the codefendant's trial did go and that's also the recollection – did go to the jury on that charge.  I don't remember that for certain.  It could be corrected by the record.  The kidnapping, a first degree felony punishable by life, I would, based on my observation, agree with what Mr. Phillips had said.

The State's case had some bumpy moments, the defense case went better than expected, but at the same time even with those bumpy moments, I'm confident Mr. Bryant would have been convicted, as his attorney advised him.

It is not an attorney's job to lie to their client and give them false hope that they are going to be acquitted of something when that's not the true facts of the case. An attorney is required to give a client realistic information about what's probably going to happen.

Now they don't have a crystal ball.  I'll guarantee you had Ms. Dandelake been called in here, the attorney for the codefendant, she would have told you she believed that the codefendant probably would have been convicted. You know, things happen with juries.  And I think that's really the situation we have here.  Mr. Bryant got false hope because of an aberrational verdict as to the codefendant.

I think Mr. Phillips' advice to him that he was probably going to be convicted was right on the money.  You know, exactly what degree of robbery it would have been is pretty speculative at this point in time.  But, I mean, it was clearly not a firearm, but it was a BB gun.  I think an argument could be made it was a deadly weapon.  It certainly was a weapon and I would have expected the jury to so find.

There has been no evidence of coercion. I accept Mr. Phillips' testimony that he did not pressure or coerce Mr. Bryant into pleading in this case. That's supported by the plea colloquy, which was extensive, with Mr. Bryant.

It is even supported by subsequent letters Mr. Bryant has wrote.  Until his testimony here in the court, he has never indicated Mr. Phillips coerced him.  I worked with Mr. Phillips and I am comfortable that's not the type of conduct Mr. Phillips engaged in.

You know, were there disputes between Mr. Phillips and his client?
Certainly. This was a high stakes, a high-stakes case.  Mr. Bryant was
looking at a very, very significant possibility of getting life in prison.  And I
think any attorney who didn't so advise him would have been committing
ineffective assistance of counsel to tell him otherwise.

So I'm going to deny the motion to withdraw the plea as to all cases.

Ex. H, evidentiary hearing on March 10, 2004, p. 35-39.  These findings were

incorporated by reference in the written order denying the motion to withdraw the plea.

Ex. I.

At the hearing on February 25, 2004, Petitioner testified that he was offered a 20

year sentence and decided to enter nolo contendere pleas toward the end of his trial (on

the second day) in case number 2002-CF-4499 for armed robbery and kidnapping.

Since the trial had been in progress for several days, Petitioner he had a full opportunity

to see which way the evidence was falling.  Ex. H, February 25, 2004, transcript, pp. 8,

15.  He said he accepted the plea offer because his attorney told him he would lose at

trial.  *Id.*, pp. 11-12.  His attorney told him he would lose because of the evidence in the

case.  *Id.*, pp., 14-15.

Plaintiff's former attorney, Mr. Phillips, was not present for the first hearing.  *Id.*,

p. 19.  The trial court made it clear that having Mr. Phillips as a witness would help the

court.  *Id.*, p. 20.  The court said: "Well, it's an important decision.  I think it would be

appropriate to give the Court all the facts that you can muster before I make a decision

on this case."  *Id.*

The hearing continued on March 10, 2004.  Ex. H, March 10, 2004, transcript.

Donald Phillips, Petitioner's former attorney, testified that he deposed the witnesses in

the case.  *Id.*, p. 7.  He said he told Petitioner that he faced possible life sentences for

the armed robbery and the kidnapping charges.  *Id.*, p. 8.  Phillips told Petitioner that based upon his evaluation of the evidence, he would be convicted.  *Id.*, p. 10.  At some point in the trial, after the state had problems establishing that the BB gun used in the crime was a firearm, the state offered a 20 year sentence in exchange for a plea and testimony against the codefendant.  *Id.*, pp. 12-13.  Phillips said he told Petitioner that he thought he would be found guilty of kidnapping and a lesser count of robbery since the state could not prove a firearm.  *Id.*, p. 14.  The victim of the kidnapping and robbery identified Petitioner because she had gone to high school with him.  *Id.*, p. 18.  Phillips also said that Petitioner had told law enforcement officers where to find "the rest of the cash" in his roommate's room.  *Id.*, p. 19.  Phillips said that the evidence that Petitioner and his codefendant had taped the hands of the victim during the robbery would be enough to prove kidnapping to facilitate a robbery.  *Id.*, p. 22.  Phillips thought that the state could prove robbery with a weapon, a second degree felony punishable by 15 years in prison.  *Id.*, p. 24.  Phillips said that there was at least an hour recess to consider the plea offer before the trial court came back into the courtroom to hear the plea.  *Id.*, p. 27.

At the plea colloquy on June 25, 2003, Petitioner told the court that he had gone over the plea agreement with his attorney, Mr. Phillips, and his attorney answered any questions he had.  Ex. F, pp. 12-13.  The court fully explained the plea agreement, and Petitioner said he understood that he would be sentenced to a 20 year term on the armed robbery and kidnapping.  *Id.*, p. 14.  Petitioner denied that he had been threatened to enter the plea or that any other promises were made.  *Id.*, p. 16.

The state court's factual determinations are presumed correct unless the Petitioner rebuts the presumption by clear and convincing evidence.  § 2254(e)(1).  Petitioner has not made such a showing here, and the state court's factual findings are fully supported by the record.

As to legal issues, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d); Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146  L.Ed.2d 389 (2000); Ramdass v. Angelone, 530 U.S. 156, 120 S.Ct. 2113, 2119-20, 147 L.Ed.2d 125 (2000).  Petitioner has not made either showing.  This court must give deference to the state court ruling.  Ground one affords no relief.

**Ground Two**

Petitioner contends his trial counsel was ineffective for failing to tell him that he had a defense to the charge of kidnapping to facilitate a felony.  Doc. 8, p. 4.  He asserts that he did not participate in the duct taping of the victims, and had no knowledge that his codefendant would do this.  *Id.*, p. 9 on ECF.  He contends that he was merely present at the crime.  *Id.*, p. 10 on ECF.  He contends that he had a defense, that the kidnapping was the independent act of his codefendant.  He contends that his plea was involuntary due to this ineffectiveness.  *Id.*, p. 4.

Respondent points out that while Petitioner raised this claim in his Rule 3.850 motion, the only claim he raised on appeal from denial of that motion was the trial court's failure to appoint Rule 3.850 counsel.  Respondent argues procedural default. Doc. 18, pp. 38-39.

The "one complete round" exhaustion requirement set forth in O'Sullivan v. Boerckel, *supra*, applies to post-conviction review as well, and a prisoner must appeal the denial of post-conviction relief in order to properly exhaust state remedies.  Leonard v. Wainwright, 601 F.2d 807, 808 (5th Cir. 1979) (Florida prisoner must appeal denial of Fla.R.Crim.P. 3.850 relief to exhaust remedies); LeCroy v. Secretary, Florida Dept. of Corrections, 421 F.3d 1237, 1261 (11th Cir. 2005), *cert. denied*, 126 S.Ct. 1458 (2006) (as Florida prisoner failed to properly exhaust claim on direct appeal or Rule 3.850 appeal, it was procedurally barred, citing Coleman); Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) ("Boerckel applies to the state collateral review process as well as the direct appeal process").

Petitioner admits that he did not raise this claim on appeal from denial of his Rule 3.850 motion, but argues that he was not required to file a brief on appeal because the

Rule 3.850 motion was summarily denied without an evidentiary hearing.[1]  Doc. 20, p. 5.


Petitioner is mistaken.  The Rule 3.850 evidentiary hearing was held on May 14, 2007.  Ex. LL.  The state court began the hearing by informing Petitioner: "What we are going to do with Mr. Bryant is have an evidentiary hearing."  *Id.*, p. 2.  The state argued that an evidentiary hearing was not needed since there had been a hearing on the motion to withdraw the plea.  *Id.*, pp. 2-6.  The court said that the first thing it had to decide is "whether you can state a claim to anything that requires additional evidentiary hearing."  *Id.*  The court later said it had to hold an evidentiary hearing.  *Id.*, p. 11.  The court placed Petitioner under oath and took testimony from him, including cross examination, and the state called Detective Todd Chaires, who took a confession from Petitioner.  *Id.*, pp. 6-33.  In summary, an evidentiary hearing was held on Petitioner's Rule 3.850 motion.  The claim presented here is now procedurally defaulted for failure to raise it on appeal from denial of the Rule 3.850 motion.

If a claim was not fairly presented but is procedurally barred from further state court review, Petitioner must demonstrate cause for the default and actual prejudice, *or*

---

[1] No appellate briefs are required in Florida on appeal from the summary denial of a Rule 3.850 motion without an evidentiary hearing. Fla. R. App. P. 9.141(b)(2)(C) (which applies where there had been a ruling on a Rule 3.850 "without evidentiary hearing"). Therefore, "a petitioner who does file a brief in an appeal of the summary denial of a Rule 3.850 motion does not waive any issues not addressed in the brief." Darity v. Sec'y, Dep't of Corr., 244 Fed. Appx. 982, 984 (11th Cir. 2007) (not selected for publication in the Federal Reporter) (citation omitted).  Thus, "regardless of whether or how Darity identified his claims to the state appellate court, he did exhaust his state remedies prior to filing the instant § 2254 petition, and these claims are not procedurally barred." *Id.  Accord*, Cortes v. Gladish, 216 Fed.Appx. 897, 899 (11th Cir.  2007) (not selected for publication in the Federal Reporter).

demonstrate that the constitutional violation has probably resulted in conviction of an innocent person.  Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2565, 115 L.Ed.2d 640 (1991); McCleskey v. Zant, 499 U.S. 467, 494-95, 111 S.Ct. 1454, 1470-71, 113 L.Ed.2d 517 (1991).  Petitioner has not done so.  Thus, the court cannot reach the merits of Petitioner's federal claims in ground two.

**Ground Three**

Petitioner contends that his Sixth Amendment right to counsel was violated when the Rule 3.850 court refused to appoint counsel for him.  Doc. 8, p. 5.[2]  This fails to state a Sixth Amendment claim.  There is no right to counsel in state post-conviction proceedings.  Jones v. Crosby, 137 F.3d 1279, 1280 (11th Cir.), *cert. denied*, 523 U.S. 1041 (1998), *citing*, Murray v. Giarratano, 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989).  *Cf.*, 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").

**Ground Four**

Petitioner contends that the intent of his plea agreement was that he was to be sentenced to a combined 20 year prison term, with all sentences running concurrently.  Doc. 8, p. 10 on ECF.  He cites Hill v. Lockhart as authority for relief.  That case, as noted earlier, concerns the involuntariness of a plea due to ineffective assistance of counsel.  *Id.*  Liberally construed, therefore, ground four is deemed to be such a claim.

---

[2] Though Petitioner said "see attached" for a continuation of this claim, the attachments jump from ground two to ground four, indicating an intention not to provide additional description of this claim.

He also cites the Eighth Amendment and due process.  *Id.*  Petitioner is in fact serving a combined 25 year term.  Doc. 18, p. 50.

Respondent argues that Petitioner only presented a state law claim to the state court, and did not exhaust this federal claim.  Doc. 18, p. 50.  Petitioner raised the sentencing issue in a motion for correction of sentence.  Ex. SS.  He asserted that the Florida Department of Corrections "has Defendant serving a twenty-five (25) year sentence," and he contended that the plea agreement "specified that all the above-mentioned sentences were to run concurrent with each count and each case, for a total of twenty (20) years."  *Id.*, p. 1.  Petitioner did not mention any sort of federal claim in this motion.

The state trial court denied the motion, finding that the 5 year prison sentence in case number 2002-CF-4294 had been on August 19, 2003, and was not a part of the sentencing that took place on March 10, 2004, pursuant to the plea agreement.  Ex. TT, p. 2 (R. 8).  The court referred to the sentencing transcript of March 10, 2004, where the court discussed the fact that the sentencing in case number 2002-CF-4294 was not part of the sentencing on March 10, 2004.  *Id.*, citing the transcript, pp. 40-41.  In that sentencing transcript, counsel for Petitioner, Alex Morris, stated that Petitioner's motion to withdraw his plea "would have been inappropriate with respect to that particular case and case number [case number 2002-CF-4294]" because Petitioner had already been sentenced in that case.  *Id.*, transcript, pp 40-41 (R. 34-35).[3]

_____

[3] Whether Petitioner had already been sentenced in case number 2002-CF-4294 seems to me to be beside the point as to whether the plea agreement required all sentences in the four cases be imposed concurrently.  Petitioner seems to have had a colorable state law claim on the record before me.  At the plea colloquy which occurred

This was determined as a matter of state law and interpretation of the plea

agreement because no federal claims were presented or adjudicated.  A violation of a

state rule of procedure or of a state law is not itself a violation of the federal constitution.

Engle v. Isaac, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982);

Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1989) (sentencing guidelines).

Petitioner's federal claim that counsel was ineffective for allowing a combined 25 year

sentence to be imposed was procedurally defaulted.  Petitioner has not shown cause for

this default, or prejudice to the outcome.  Thus, the court cannot reach the merits of

Petitioner's federal claims in ground four.

**Certificate of Appealability**

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he

district court must issue or deny a certificate of appealability when it enters a final order

adverse to the applicant," and if a certificate is issued "the court must state the specific

---

in the middle of the trial in case number 2002-CF-4499, his attorney said that he would
be sentenced to 20 years.  Ex. F, p. 3.  He said: "*Each case that he is on that he is
pleading to would run concurrently*, all counts, would run concurrently, including the
VOP's that we are about to go over." *Id.* (emphasis added).  He said: "In the other
felony case that is currently pending, that is Case No. 2002-4294, in this case, Mr.
Deonta Bryant would withdraw his previously entered plea of not guilty." *Id.*  He then
said he would receive five years for count one in case number 2002-CF-4294,
"concurrent, with the other counts in this case." *Id.*, p. 4.  Then, after stating the agreed
sentence of 211 days as to count 2 in case number 2002-CF-4294, counsel said: "*All
counts in this case running concurrent with all other cases.*" *Id.* (emphasis added).
After that, Petitioner's counsel referred to other cases pending as to which pleas were to
be entered, set forth the agreed sentences, and repeatedly said "all cases running
concurrent." *Id.*  It is noted, however, that the sentence imposed in case number 2002-
CF-4499 was only made concurrent to the revocation of probation sentences, case
numbers 2000-CF-2028 and 2001-CF-303, and did not mention concurrency with the 5
year sentence already imposed in case number 2002-CF-4294.  Ex. V.  I also do not
know why Petitioner was sentenced separately in case number 2002-CF-4294. Ex. V.

issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely

notice of appeal must still be filed, even if the court issues a certificate of appealability.

§ 2254 Rule 11(b).

I find no substantial showing of the denial of a constitutional right.  § 2253(c)(2);

Slack v. McDaniel, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 1603-04, 146 L.Ed.2d 542

(2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, I

recommend that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order,

the court may direct the parties to submit arguments on whether a certificate should

issue."  The parties may make argument as to whether a certificate should issue by

objections to this report and recommendation.

**Conclusion**

Accordingly, it is **RECOMMENDED** that 28 U.S.C. § 2254 petition for writ of

habeas corpus filed by Deonta Bryant challenging convictions and sentences for

revocation of probation in case number 2000-CF-2028, revocation of probation in case

number 2001-CF-303, for possession of cocaine and resisting an officer without

violence in case number 2002-CF-4294, and for armed robbery with a deadly weapon

and kidnapping to facilitate a felony in case number 2002-CF-4499 in the Circuit Court

of the Second Judicial Circuit, in and for Leon County, Florida, be **DENIED WITH**

**PREJUDICE** and that a certificate of appealability be **DENIED** pursuant to § 2254 Rule

11(a).

      **IN CHAMBERS** at Tallahassee, Florida, on May 17, 2011.


                **s/**    **William C. Sherrill, Jr.**
                **WILLIAM C. SHERRILL, JR.**
                **UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

      **A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**